All right. Please proceed. Good morning, Your Honor. Jeff Price representing the plaintiff and the appellant in this case. Congress enacted Section 1983 to enforce the Bill of Rights, including the Fourth Amendment, which was ratified to prevent general warrants and to protect a person's security. In this case, there was never probable cause to search the home of Joanne Blight, the plaintiff, who was 74 years old at the time and is now 79 years old. I'd like to approach this chronologically. First, I will discuss the fact that the warrant itself was invalid. The reason it was invalid is that it was overbroad. The reason that it was overbroad is that the defendants failed to engage in what would be reasonable, which is the touchstone of the Fourth Amendment, in this case. How did they do that? They failed to do any investigation, which is required under the Fourth Amendment, as stated by the Supreme Court, notably in Maryland v. Garrison, 480 U.S., 79, 1987. That decision requires, as it states, a reasonable investigation. In addition, the defendants ---- Kagan. Can you point to a case that invalidated a warrant because of lack of reasonable investigation? Because Garrison didn't do that. Garrison didn't do that. And I don't have a case off the top of my head that invalidated a warrant. Usually ---- I thought the normal rule was that the officers needed to have probable cause to get the warrant, but that they don't have to just keep investigating forever. So by the point ---- so we could talk about whether there was probable cause for the warrant, but I'm not sure this lack of investigation really gets you anywhere if you don't have cases saying that beyond a point where there's probable cause, you have to keep investigating. Well, in Garrison itself, Garrison states that the defendants or that police have a duty to discover and to disclose information to the magistrate. So that's what Garrison itself says, and it says that at page 239. So there is a paucity of cases that are in the posture of this case. But in this case ---- Unless it's clearly established that the officers did something unconstitutional. Right? So I think we need to be able to point us to cases that clearly establish the principle. It's clearly established in Maryland v. Garrison. Well, since Maryland v. Garrison didn't invalidate a warrant for lack of investigation, I think we have trouble saying that there needed to be further investigation. I think maybe you should talk about probable cause or something else. I mean, maybe my colleagues think this is more compelling than I do, but I'm having trouble following this line. Okay. Maryland v. Garrison states, as I stated, that the police are required to discover and disclose certain information to the magistrate. In this case, they had ---- not only did they have the information based upon the CI deposition, they had the information that Joan Blight and her husband lived there. They had the information ---- But they also had the information that Nick lived there. And Nick ---- and the CI's deposition is ---- That Ford lived in the other unit. They had the information that Mr. Ford lived in the main residence. And that Nick lived in the mobile unit. And they also had the information, Your Honor, on page 196 of the CI's deposition, which is at ER 8, 1823, that the CI had told Armando Garcia and the other officer that the Blights had lived in the house that was not the main house. And he pointed to that. Is there any reason that the Blights couldn't have shared the mobile home with Nick? Well, Joan Blight ---- I mean, Dallas Blight testified that that did not happen. But the officers didn't know that. And there's no evidence of that either. But it seems like for your argument that they had some ---- Unless we know they didn't share it with Nick, we still have the idea that Nick lived there because they were also told that, right? The CI ---- No. The only evidence that the magistrate had when determining probable cause is one line in the Exhibit C, which is that Nick lived in the other residence. That's the only evidence he had. The reason I'm focusing on investigation is that everyone knows that the Blights lived there and Nick did not live there. He never lived there. In fact, when the search was executed ---- Everyone except the CI, who gave the evidence that the officer used in the war. The CI ---- Okay. The CI ---- I think you're fighting the facts. I really don't. I think the facts are being ignored by the district court. And ---- Is there any evidence from any source that the officers were told that the Blights lived exclusively in the mobile unit and that Nick did not live there, contrary to what the CI said? There is conflicting evidence in the CI's deposition. He told ---- He stated in his deposition that he told the officers that the Blights lived in their home. He also told defense counsel in his deposition that his memory was refreshed, that he informed the police that Nick lived in that same home. In this case, this is a summary judgment case. So all reasonable inferences are to be found in favor of the plaintiff, the nonmoving party. Is it a reasonable inference that if Nick lived in the home, the Blights did not live there or vice versa? It is a reasonable inference that the people who really lived there, and there was never ---- That's why I focus on investigation. There was never any investigation in this case. The mailboxes were ignored. So, yes, it is a reasonable inference that the Blights lived there because if the mailboxes had been investigated, it would be very simple to find out that this other residence had its own address, which was 5846 East Carpenter Road, and that the Blights lived there. The problem with this case is that absolutely no investigation was done. And under Illinois v. Gates ---- But there was investigation. There was investigation. They talked to the CI. They drove by the property with the CI. They looked at maps. I mean, so they ---- the CI told them that Nick lived in the mobile home. They put that in the warrant. Why did that not give probable cause to search the mobile home? The CI told them that the Blights lived in the mobile home. Well, also that Nick lived in the mobile home. But he ---- but they didn't put that the Blights lived in the mobile home in the affidavit, which is ---- Okay. So that might be a claim that there was lying to the judge or judicial deception. But then that has to be material. And so we get back to whether they could have shared the mobile home. There is no reasonable inference that Nick and the Blights shared the mobile home. The CI never stated anything of the sort. Well, if he said they both lived there, isn't that sort of like saying they shared it? It's ---- the way he makes the statements is such that there is no indication that Nick was living in the house with the Blights. There's only one statement. I can't believe that Gould is trying to ask you a question. Well, you can finish your answer to Judge Friedland on that point. Then I do have a question for you. The theory that somehow the two lived together is merely a construct based upon the inconsistent statements that the CI made in his deposition. There is no independent evidence that he thought they both lived together or that they did. There is absolutely nothing because there was no investigation ever. And under Illinois v. Gates, there was no corroboration of the CI's information. So Illinois v. Gates was also violated. And that's at page 241, 242. Counsel, I'd like you to get to the question that's on my mind for a moment. I haven't made a decision on the argument that you're making that there's an inadequate investigation under garrison. But assuming that argument were to be rejected by the panel, and we say there was probable cause under Gates to go out to that property and to start to search the premises, isn't there some authority that talks about when the police have to stop a search that they've started and make further investigation then upon learning that something's different than what they thought? Of course. That's, in this case, that should be an automatic reversal in this case. Okay, but you haven't addressed that point yet. Not in my argument. You're spending all the time on this reasonable investigation. Why don't you address that point? With respect to the execution, there should be no question that this case should be reversed because at 7-19, the police learned that they learned from a woman who was driving. In fact, this was Officer Garcia, that Nick and the kids were home. The officers who executed the warrant found Nick in the main house. So this is a situation where Lee is nowhere to be found because he didn't live there. He never lived there since 2012. So you have Nick being found in the main house. He's called the primary by the SWAT officers. They also learned that there was an elderly resident, Ms. Blight, in the other house. There is no probable cause to believe that she had anything to do with this marijuana operation. At that point in time, the search had to be ceased. Nick was found. There was no Lee. The children were taken. So Nick left the main house. The officers knew he's coming out of the main house. How does that tell the officers that the only place he lives on this property is in the main house? How do they know that the wife and the kids don't stay in the main house and Nick sleeps in the mobile home? I mean, the whole property could be his home, right? How do we know specifically that it's impossible that Nick lives in the mobile home at that point? The woman told the officers on the street that Mrs. Blight was in the other house. Right. But we get back to this idea that perhaps she sleeps in one bedroom and Nick sleeps in the other. No, but Nick came out of the main house. Right. Maybe he was giving the kids breakfast in the main house even though he lives in the mobile home. Those were his kids. Right. So the only reasonable inference at that point in time is that Lee is not here because of the inaccurate information given by the informant and absolutely no investigation done by the police. Lee is not here. No cars were ever checked out. The mailboxes were ignored. And you have Nick coming out of the main house, which is where he lives, because that's where his children are. And then you have Mrs. Blight. There's just stretching credulity to beyond reason would be that, oh, Nick lives in both houses somehow. It just is not reasonable. Was there any familial relationship between Nick and Mrs. Blight? No. No, none. There's a familial relationship between Mrs. Blight and Lee. Had anyone told the officers that, though? About what? I mean, did the officers have any idea whether Nick was related to the Blights? They were never told that Nick had any relation to the Blights. All they were told, the diagram, by the way, was invisible until February 8, 2017. It was never presented to the judge or anything. I'm over my time, but the only statement made in the statement of probable cause was that Nick lives in the other house. That's it. There's no evidence and no corroboration. Thank you very much, Mr. Price. Thank you. We'll hear from the city of Manteca. Good morning, Your Honors. Laurie Sobranski on behalf of all the defendants. Do you want to lower that microphone so we can hear you a little bit better? I'd rather raise myself. I'll settle for this. Is that better? Better. Okay. Thank you. There are two key problems with the analysis that plaintiffs have offered this court. The first one is there's a lot of factual characterizations and accusations that bear no resemblance to the facts that exist in this record. The second is plaintiff imposes legal obligations on these officers that simply do not exist and would be impractical and impossible to put into play in the real world. I don't want to spend a lot of time talking about whether an investigation was conducted. As Your Honor pointed out, there was an investigation conducted. They met with the C.I. They drove by the property. They used Google maps to confirm. They used the DMV and clear websites to confirm information. They confirmed with a DMV photo. And the C.I. provided them a diagram of the property. On two occasions during this investigation, the C.I. told the officers that Nick lived in that mobile home. He did it once when they were on the drive-by, the first drive-by, where they had a Google maps open and the C.I. was pointing out the characteristics of the property and who lived where. And the C.I. did it a second time when he provided a hand-drawn diagram that specifically labeled Lee's house, which was the main house, and Nick's house, which was the mobile home. So your opposing counsel thinks that this diagram was created after the warrant was obtained? The diagram was created at some point before the search. The evidence in the record is that it was given to the officers. Garcia didn't request it, but the C.I. prepared it, provided it to the officers sometime before the 23rd of October, which was a day before the search. But the information on that diagram, regardless of the exact date, the information on that diagram about where Nick lived was the same information that the C.I. told the officers when they were in the car together driving by, and the same, and then was confirmed. And at the point when you're saying it's the same information that they were told verbally about where Nick lived, that really this diagram doesn't matter? Well, the diagram matters because it corroborates it. It confirms it. The C.I. told them before the warrant was issued clearly that Nick lived in this mobile home. At some point before the search, they also received this diagram from the C.I. that repeats that, and it's in his own handwriting, and the one thing that is clear about the C.I.'s testimony, maybe the only thing clear about the C.I.'s testimony, is that that handwriting on that diagram is definitely his. The C.I. prepared it and provided it. Is the C.I. even that sure? I thought he said it's probably his or hers. No. There was a place where finally the C.I. says, yes, that is mine, and I'm 100 percent certain that I was responsible for preparing this diagram. So the C.I. does that. It is undisputed that the handwriting on that diagram is the C.I.'s, and it is undisputed that that diagram confirms what he told the officers, which is Nick lived in that mobile home. Kennedy, could you address the issue that was brought up by Judge Gould? At one point, Nick, at 719 in the morning, comes out of the main building where his children are. At that point, doesn't it become clear that Nick doesn't live in the mobile unit, but it lives in the main unit, and shouldn't the search stop? No. The search absolutely should not stop, because the SWAT team, the officers get onto the property. They get there. Nick, they make their announcements. Nick exits the house. Children exit later as well. But the officers never, they don't go into the house. All they know is Nick is coming out of it. There could have been a million reasons Nick was in that house. The officers knew at the time they were in for that search that the main house was, what the C.I. told them, was where some of the drug operation things were going on. That's where marijuana was stored and that's where evidence of the operation might be happening. Nick could have been in there at work that day. Your Honor's point was exactly right. That information that he's leaving a house doesn't really tell the police anything. And that idea that they would have known Nick lived there and Ms. Blight lived in the trailer alone contradicted all of the information that the police had prior to that moment. So the law tells us that if a search is being conducted and somebody tells the officers, oh, John doesn't live in that unit or my son isn't home and doesn't live here anymore, officers don't have to take that as truth when it contradicts the information that they already know and when they can't verify it in that moment. The officers could not verify where Nick lived or Nick's relationship with that mobile home in that moment without conducting the search. They had to, and the officers testified, that they had to clear those houses out of anyone because, remember, they're walking into a situation that they think is incredibly volatile with paranoid folks there that had been robbed, that had guns, that had dogs. They're concerned about safety. So they're not blazoning into this house to search it until they've got everything cleared. So under the law, the State of Hawaii case that we cite and the Ayers case that we cite, they were not obligated to take the word of the suspect or the suspect's wife about who or whether Nick lived or did not live in that trailer. And, by the way, there's no evidence that either Nick or the wife actually said Nick doesn't live in that trailer. They just said Blight lived in that trailer. So we're back to this fundamental question, what does that matter? Because as long as Nick lived there, too, it doesn't matter who owned the trailer. It doesn't matter if the Blights lived there as well. The only thing that mattered for probable cause and for the constitutionality of this search is that the officers thought there was, were told there was a connection with Nick and that mobile home, which gave them probable cause to search it. I have to talk about one other thing, because it is not, the evidence is not, it is not true that the officers were told that Blight lived in the mobile home. Here's what the evidence of the confidential informant really is. The confidential informant said Nick lived in the Blights' house, we know that. The confidential informant said the Blights live on the property, but never says where. So the officers don't know, going into that, where the Blights live. Then the confidential informant gives a long laundry list of responses that are I don't recall responses, that C.I. did not. But if we're going to take the facts in plaintiff's favor, then we have this testimony by the C.I. that the Blights lived on the property, and when they arrive, the wife tells them that Mrs. Blight is in the mobile home and the husband has left for work. So doesn't that, in inferences in their favor, tell us that the Blights live in the mobile home? Well, the Blights might live in the mobile home, but that's immaterial. Well, that may be right, but I'm just not sure why you're pressing this point that there wasn't an inference that the Blights lived in the mobile home. It seems like that's probably not fair to the plaintiffs. Well, I think the way the record is being characterized doesn't, it just doesn't fit with the actual testimony that was provided. And we go over this on our brief. We give you the case citations. But this is what we know. This is what was undisputed. The C.I. told the officers that Nick lived in the mobile home, and the C.I. never said where the Blights lived. So you might have a we have a comment from the suspect and the suspect's wife that the Blights was there, but we're back to materiality, because as far as the officers know, Nick lives there, too. So it doesn't make any difference to the officers who are executing this search warrant, and it doesn't invalidate the warrant. On summary judgment, the judge took all of this internally inconsistent testimony from the C.I. about who lived where and what he said. And first of all, says, gee, the C.I.'s testimony is so internally contradictory that it's hard for a reasonable fact finder to take really anything from it. But then he says, giving the plaintiff the benefit of the doubt, as I have to do on summary judgment, the most we can say is what I just said, that Nick lived in the mobile home, and perhaps the Blights lived there, too. So the Court gives plaintiff the benefit of the doubt, recognizing that it's all incredibly contradictory. But what plaintiff does is takes pieces of the C.I.'s testimony about what he said, about who lived where, without paying attention to all of the other places where he contradicted himself. So we have a weird situation here where the C.I. needs to be treated as credible to have there be probable cause for the warrant, and when he later testifies in his deposition, he seems not very credible at all. He's a mess. So do we retroactively wonder whether he should have been trusted? Well, at the time, number one, years had gone by, right, and a lot of his deposition he testified that he just didn't remember it had been a long time ago. But at the time, I think that question is irrelevant. You can't go backward in time. At the time the warrant was applied for and this information was being provided, the officers knew this C.I. They had worked with this C.I. on other cases. The C.I. had provided accurate information in those cases. They had every reason to believe he was reliable and trustworthy. And in fact, everything the C.I. said was true, except that the Blytes lived in that trailer and Nick did not. I thought he said Lee still lived on the property. That seems not to have been true. Well, we don't really – that turned – I think maybe that wasn't true, but that Lee still wasn't there at the property because the operation was at the property. So he would see Lee at the property because he was there within two weeks helping Lee with some of the operational work that they were doing. So, yes, you're right, maybe Lee lived in another house, but it doesn't matter because there's no – because the evidence is clear that the growing operation was at that property and Lee was still associated with that property. So I think we're – we just – I'm constantly feeling like we're coming back to the place that all of these inferences plaintiff would like us to draw are either not supported, they're not reasonable and supported by the record, or they just don't matter. They just don't matter. And what the Court did was not disregard the testimony of the C.I. The Court gave the C.I.'s testimony, the benefit of the doubt from what you could do with it given its contradiction. This is not a case where three witnesses said the light is green and the C.I. says the light is red and the Court improperly says, okay, I'm going to disregard that. It's a case where three people say the light is green and the C.I. says in deposition, the light is red, the light is green, I don't know what the light is. And the Court says, what can I do with that? On summary judgment, that cannot create a triable issue of fact. So that's our evidentiary problem. Is part of your argument that this whole property was part of the marijuana operation, so it doesn't really matter who lived where? Yes. I mean, yes. There are two aspects of that. The Court in U.S. v. Alexander tells us a search of an entire property, even with different homes and buildings on it, is fine if the entire property is in the suspect's control or is in the control or if the ‑‑ it's suspect because of the drug operation that's going on. I'm sorry. So both of those things are true here. We know from the evidence that the entire property was being used for this drug    operation. There was outbuildings being used for drying, there was a home being used for storage. And we also know that Nick was associated with the mobile home, and we know that drug dealers and their assistants often keep evidence where they live. So the whole thing is suspect. On the other part of that equation, Lee owned that entire property. I mean, the Blights owned the mobile home, its personal property on it, but it's a four acre parcel. And Lee owned the entire thing. In fact, if you look at the evidence in the record on the assessor, the tax issues, it's the same parcel number that's associated with the mobile home and with the property itself. So I think both of those Alexander elements are met, and so it really ‑‑ again, it really doesn't matter. I'm running out of time, so I just want to make one touch point on the qualified immunity issue, because I think ultimately, even if there was some reason that this warrant was invalid or the search was overbroad and it was unconstitutional, qualified immunity is going to apply. It's going to apply at all aspects of this, because there is no evidence of judicial deception, and there's nothing about that warrant on its face. The CI did not mention ‑‑ pardon me, the officers did not mention to the magistrate that the CI mentioned that Blight also lived in the mobile home. Isn't that the judicial deception? The officers were not told ‑‑ the officers testified they were not told that Blight lived in the mobile home, and ‑‑ I thought they were. No, they were not. They were told that Nick lived in the mobile home and Lee lived in the house. They were never told that Blight lived in the mobile home. They were never told. That's what I'm saying. If you look, although counsel continues to say that, they were never told that. And if you look at the citations to the record, you will see that that is true. All that they were told, all that they found out later was that Blight maybe, maybe lived in the property as well. But they were ‑‑ at the time that warrant was issued and that affidavit was submitted, the only thing the officers were told was that Nick lived in that mobile home, and that is it, and that Lee lived in the main house. But that's it. So there's no judicial deception in this record, and there's nothing about the face of the warrant that would show that it was obviously defective in some way. So ‑‑ But I'm not sure what you just stated is right, because I thought when we were looking at this ER 1400 before, it's ‑‑ it's the CI saying he told Garcia, Officer Garcia, that the Blights lived on the property. Yes. That the Blights lived on the property, but not, excuse me, not in the mobile home. And there's a ‑‑ there's a difference. The officers testified that before the warrant was issued, the CI never mentioned the Blights, never mentioned it at all. But there's conflicting evidence on that. The CI testifies in deposition that he said to them that the Blights lived on the property, but did not say where, and that part of it is undisputed. But that was still omitted in the warrant application. The officers could have said to the judge, we think there are elderly people living somewhere on this property. If ‑‑ yes, I agree with you, that if that ‑‑ if the officers had known that, if it's true that the CI said that, which we'll accept for our purposes, the officers could have said it. But it would not have made a difference, because, again, we're back to materiality. It didn't matter. As long as Nick lived there, too, it didn't matter if the Blights were there. If the court has no additional questions, I will submit. Mr. Price, we'll give you a minute for rebuttal. Thank you, Your Honor. Your time is up. This is the third court that the defendants are trying to deceive, and hopefully it will not be the third court that is deceived. So what counsel just said about the officers not being told that the Blights lived in the mobile home is absolutely false. Look at ER 1823. 1823. That's the sealed record where the CI testifies. You testified that very clearly you had related to Armando Garcia and Osborne that the Blights lived. Can you go a little bit slower? I'm sorry. That the Blights lived in one house and Lee Ford lived in the other house. Correct? Yes. Then he is asked to show me where the Blights' house is on the diagram. And he points. Okay? So the statement just made by counsel is absolutely false. Okay. So they say where did the Blights live, and he points. Where does that say that he told the officers that? He just said right here. It says below that on the next page, 1824, and you related that to Garcia and Osborne. Yes. Line three and four. Also, there was judicial deception because the officer lied to the magistrate and told him that the CI was not promised anything. That is absolutely false. The CI stated, even in questioning by Mr. Allen, when asked, isn't it true that you were not promised that you were just going to meet with the DA? No, that is not true. I was promised to have my cases resolved. He had three cases. He had three felonies. He was going to get three felonies, knocked down, and misdemeanors. That's his testimony. And that was not told to the magistrate. Okay. Thank you very much, Mr. Perkins. Thank you. The case of Blight v. Mantico is submitted for decision. And we're going to take a 10-minute break at this time. Thank you very much.
judges: Gould, Bea, Friedland